Ellen McCann *et al.*

*v.*

John W. Day.

1. RIGHT OF WAY—*notice of.* Where a party purchased a right of way, and received a written instrument to evidence the fact, and both sides of the way were fenced, and it was in constant use by him, for the purposes of a way, although the writing was not recorded, these facts constitute such notice to a subsequent purchaser as to prevent him from holding the right of way.

2. EQUITY—*injunction.* In such case, equity has jurisdiction, as the injured party has no adequate remedy at law, and will perpetually enjoin such purchaser from obstructing the right of way.

APPEAL from the Circuit Court of Will county; the Hon Josiah McRoberts, Judge, presiding.

The opinion states all the facts necessary to an understanding of the case.

Messrs. Uri Osgood & Son, for the appellants.

Messrs. Goodspeed, Snapp & Knox, for the appellee.

| 57 | 101 |
|---|---|
| 34a | 167 |
| 57 | 101 |
| 142 | 116 |
| 144 | 641 |
| 57 | 101 |
| 149 | 571 |
| 57 | 101 |
| 160 | 175 |
| 57 | 101 |
| 178 | 36 |
| 57 | 101 |
| 186 | 398 |
| 57 | 101 |
| 192 | 434 |

Mr. Chief Justice Lawrence delivered the opinion of the Court:

On the 20th day of March, 1850, one Taylor owned the N. E. of the N. W. of section 15, township 36 north, range 10 east, and also held a bond from one Daggett, for the forty acres lying west of the above described tract, and for a tract of about thirty-five acres, lying east of said tract, and extending to the DesPlaines River.   On that day Taylor sold to Day, the complainant herein, his interest in the west forty, held under Daggett's bond, and also a right of way from a public highway, known as the Chicago road, eastward along the north line of so much of his own forty as lay east of the Chicago road, and along the north line of the thirty-five acre tract, to the DesPlaines River.   The Chicago road runs north and south, about three rods west of the west line of the thirty-five acre tract.   Day paid the balance due Daggett, and received from him a deed for the west forty, and for a right of way along the north line of the thirty-five acre tract.   There was a public highway running along the north line of Day's forty, and of so much of Taylor's forty as lay west of the Chicago road, and terminating in the Chicago road.

Thus Day, by his purchase from Taylor, and the subsequent deed from Daggett, acquired a right of way from his farm to the river.   The instrument, executed under seal by Taylor to Day, purported to assign and transfer, not merely a right of way along the north line of the thirty-five acre tract held under bond from Daggett, which, by itself, would have been entirely inaccessible and useless to Day, but also a right of way from the Chicago road, which would pass for three rods along the north line of Taylor's forty, before striking the northwest corner of the thirty-five acre tract.

After the death of Taylor, his administrator, under an order of court, sold the forty acres originally owned by Taylor, and also the thirty-five acre tract acquired by him from Daggett,

to one Matthewson, who immediately conveyed to one Fitz-patrick. In both these deeds, a road-way was reserved on the north line of the thirty-five acre tract, but, undoubtedly, through inadvertence, the reservation was not extended along the three rods on the north line of the forty, to the Chicago road.

In 1865, Fitzpatrick sold to Ellen McCann, and in 1868, she fenced across the road-way next to the Chicago road, thus obstructing Day's access to the river, which was very important to his farm, as he had no living water on his land. Day there-upon filed his bill to enjoin her from obstructing his right of way, and the court, upon the final hearing, made the injunction perpetual.

There was no error in this decree. For a valuable con-sideration, Day had acquired from Taylor, a right of way across the three rods. It is true, the instrument showing the sale was not recorded ; but Fitzpatrick, who was the real purchaser at the administrator's sale, the deed being first made to Matthew-son as a matter of convenience, was fully notified of Day's claim when he received his deed. He also had constructive notice, the road-way having been left outside the fence, on the north line of the farm, from the Chicago road eastward. Fitz-patrick rebuilt the fence from the Chicago road to the river, a part of the distance laying a stone wall. There was also a fence on the north side of the right of way, built by one Sisson, and Day continued in the constant use of this lane, to the time when Ellen McCann bought. He had purchased, and was the owner of the easement. His recorded deed, from Daggett, showed him to be the owner of the right of way along the north line of the thirty-five acre tract, which would have been inaccessible to him, unless he could pass over the three rods on the north line of the forty, and the fact that the lane across the three rods, was openly and constantly used by him, as a part of the right of way, and that it was fenced out for that purpose, was certainly constructive notice to Ellen McCann, when she bought from Fitzpatrick, of whatever right of way

Day might legally have over the three rods. This right was perfect under his contract with Taylor.

Objection is taken to the jurisdiction of a court of chancery, but in such a case as this, there is no adequate remedy at law. 2 Story's Eq. Jur. secs. 925, 926.

The decree is affirmed.

*Decree affirmed.*