AMIE I. ADAMS, Appellant, *vs.* JOHN GORDON, Appellee.

*Opinion filed October 16, 1914.*

1. APPEALS AND ERRORS—*bill to establish a perpetual easement in land involves a freehold.* A bill to establish complainant's right to the use of water piped from a well on the defendant's land and to go upon the land to make repairs to the pumping engine, pipes, etc., is a bill to establish a right in the nature of a perpetual easement in land, and an appeal from a decree dismissing the bill lies to the Supreme Court upon the ground that a freehold is involved.

2. CONTRACTS—*resort may be had to circumstances surrounding execution of a contract.* The object in construing a written instrument is to make it speak the true intention of the parties, and where any doubt exists as to its meaning, resort may be had to the circumstances surrounding its execution.

3. EASEMENTS—*rule when owner divides land and sells a part.* Where the owner of land divides it and sells one part, he by implication includes in his grant all such easements in the remaining part as are necessary for the reasonable enjoyment of the part which he grants, in the form they were at the time he transferred the property.

4. SAME—*when purchaser has a right to assume that easement goes with the land.* Where a person has been a tenant of property for several years and has had the use of water piped from a well on adjoining premises, together with the right to go upon the adjoining land to attend to the pumping engine, pipes, etc., she has the right to assume, on purchasing the property from the grantee of the owner of the adjoining land, that the easement, which such owner had regarded as appurtenant to the land and as passing under the lease, will pass with the deed to the land.

APPEAL from the Circuit Court of Lake county; the Hon. CHARLES WHITNEY, Judge, presiding.

Appellant filed her bill in chancery in the circuit court of Lake county, Illinois, against appellee, for an injunction to restrain him from interfering with her in the exercise of her rights which she claimed in the nature of an easement in certain water facilities and a way thereto, situated on the lands of appellee. A demurrer was sustained to the bill, and appellant electing to abide by her bill, a decree was entered dismissing the bill for want of equity. She prayed and perfected an appeal to the Appellate Court for the Second District, which has transferred the cause to this court pursuant to the statute, for the reason that a freehold is involved.

It appears from the allegations of the bill that prior to November 29, 1911, appellee was the owner of a tract of about one hundred or more acres of land situated on what is known as Deerpath avenue, in the vicinity of Lake Forest, Illinois. November 29, 1911, he entered into a contract with John F. Tracy for the sale of a portion of this land, in which he contracted, among other things, that the purchaser should have the right to the use of the well located on his adjacent property, together with the pump, gasoline engine and tank situated thereon, until such time as public water mains should be installed in Deerpath avenue, with the right to use a path, not exceeding eight feet in width, from a gate on the west line of the property leading in a direct line to the well, the purchaser to maintain the well, pump, engine and tank at his own expense and furnish water for the use of appellee without charge or expense to him, and should said Tracy fail to so maintain and furnish water, his right to the use of the well and pump might be terminated by the vendor and all obligations under the contract canceled. On the same day the contract was made appellee conveyed the land described in the contract to said Tracy by warranty deed, in which no reference whatever is made to the provision in the contract in relation to the use of water facilities as above set forth. At the time the

contract was made between appellee and Tracy appellant
was a tenant on the property under a lease expiring on
November 30, 1911. January 4, 1912, Tracy conveyed the
land purchased by him to appellant by warranty deed in
all respects the same as the deed he had received from ap-
pellee, the deed making no mention whatever of the ease-
ment contained in the contract between appellee and Tracy.
Appellant alleges the omission of this matter was due to
the mistake of the scrivener in drafting the deed, but she
does not ask that the deed be reformed. For some years
the water facilities located on appellee's land have been
used by him and his tenants, including appellant, for the
purpose of supplying the premises now owned by her with
water for domestic purposes and to supply water for the
stables, lawns and gardens thereon, said water facilities be-
ing absolutely necessary and essential to the full enjoyment
of her premises. Appellant charges that one of the impor-
tant factors inducing her to purchase the premises was the
fact that she should have the right to the free and unob-
structed use of the water facilities mentioned in the con-
tract between said Tracy and appellee. The pump, pump
house, tank and engine are located on appellee's premises
about one hundred feet from the west line of appellant's
property, and the water is conveyed from there to her prem-
ises and buildings by means of an underground pipe lead-
ing from the tank on appellee's property to the house,
stable, lawn and garden on appellant's premises. The pipe
is visible on appellee's land between the point where it
leaves the tank and enters the ground, and also visible on
appellant's premises where it emerges from the ground and
connects with the faucets, plugs, flush-boxes and hydrants
on her land. A view of the premises at the time of the
purchase by Tracy and of her purchase from Tracy would
have disclosed that the faucets, plugs, flush-boxes and hy-
drants on her property were connected with the tank on
appellee's land, and that the pump, pump house, engine and

tank situated thereon were used as the means of supplying these premises with water, and that the water facilities thus provided were highly beneficial to her property. No public water mains have been installed or constructed in Deerpath avenue leading to this property, and it is indispensable to its use and enjoyment by appellant that she have the advantage of water facilities provided for it, situated on appellee's land. After appellant became a purchaser appellee permitted her to continue to use the water facilities for some time without protest and from time to time to make the necessary repairs thereon. Shortly before filing the bill he demanded of her the payment of $50 which he claimed was due on a former tenancy by her, and when she refused to pay, on the ground that it was without any foundation, appellee refused to allow her servants to make repairs on the engine used for pumping water into the tank, locked the door to the pump house, shut the water off, forbade appellant or her servants to use the well or the pathway thereto and blockaded the same by installing posts and wires across the pathway, and threatened violence to appellant and her servants if they attempted to obtain water from the well or to use the pathway leading thereto. The bill prayed for an injunction enjoining the appellee from interfering with appellant's rights in the premises and in the use of the water, pump house, engine and tank and other water facilities as above set forth, and for general relief. A general demurrer was sustained to the bill, setting forth the above facts. Appellant elected to abide by her bill and a decree was entered dismissing the bill for want of equity. This appeal followed.

The errors assigned are, (1) that the court erred in sustaining the demurrer to the bill; and (2) that the court erred in dismissing appellant's bill for want of equity.

SHEPARD, McCORMICK & THOMASON, and JOHN D. POPE, (FERRY S. PATTERSON, of counsel,) for appellant.

ELAM L. CLARKE, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellant by her bill asserts and seeks to establish and maintain a right in the nature of a perpetual easement in the adjoining lands of the appellee in the use and maintenance of certain water facilities located thereon, by means of which her house, barn, garden and premises are supplied with water. This right, if it exists, is an easement appurtenant to an estate in fee, and a bill filed for the purpose of establishing such an easement involves a freehold, and the case was therefore properly transferred to this court. *Tinker* v. *Forbes,* 136 Ill. 221; *Foote* v. *Marggraf,* 233 id. 48; *Foote* v. *Yarlott,* 238 id. 54; *Espenscheid* v. *Bauer,* 235 id. 172.

Appellant insists that she is entitled to the benefits of the contract of November 29, 1911, between Tracy and appellee, and also that the water facilities on appellee's land constitute an open and visible easement appurtenant to her premises, which passed by the deed of conveyance of the land from appellee to Tracy and from Tracy to her. Appellee insists that no rights passed to appellant under the contract with Tracy, for the reasons it was never executed by Tracy, that it was a personal contract, and that it became merged into and extinguished by the deed subsequently made conveying the land to Tracy. The appellee further insists that in order for an easement to pass as appurtenant to land, it must be open, visible and continuous and such as does not require the interference by man. We do not deem it necessary to pass upon each one of these contentions separately, but the substance of each and all of these contentions will be given full consideration.

The object in construing and interpreting an instrument is to ascertain and make it speak the true intention and meaning of the parties at the time it was made, and where any doubt exists as to its sense and meaning, resort may

be had to the circumstances surrounding its execution, for the purpose of ascertaining the subject matter and the standpoint of the parties in relation thereto. Without this knowledge it would be impossible to fully understand the meaning of an instrument or the effect to be given to the words of which it is composed. (*Goodwillie Co.* v. *Commonwealth Electric Co.* 241 Ill. 42.) This knowledge is almost as indispensable as that of the language in which the instrument is written, and a reference to the actual condition of things at the time as they appeared to the parties themselves will often afford the court great help in construing such language and arriving at the true intent and meaning of the agreement they have made. By referring to the situation of the parties and the condition of the premises at the time appellant became a purchaser of the same, we find she had been a tenant thereof for some years, the length of time not being stated in the bill, and during all of that time had used and enjoyed all of the privileges which she now claims as an easement appurtenant to her premises. In purchasing the property she had a right to assume and expect she was buying it in its then condition and would have the right to use and enjoy all of those necessary conveniences which had been placed thereon by the owner and were used in connection therewith and were recognized by the owner as being appurtenant to the premises and passing with a lease under which she had enjoyed the same as a tenant. The rule is, where the owner of lands divides his property into two parts and disposes of one part, he by implication includes in his grant all such easements in the remaining part as were necessary for the reasonable enjoyment of the part which he grants in the form in which it was at the time he transferred the property, the general rule of law being, that when a party grants a thing, he by implication grants whatever is incident to it and necessary to its beneficial enjoyment. (*Newell* v. *Sass,* 142 Ill. 104; *Keegan* v. *Kinnare,* 123 id. 280;

*Foote* v. *Yarlott, supra; Feitler* v. *Dobbins,* 263 Ill. 78; *Martin* v. *Murphy,* 221 id. 632; *Hankins* v. *Hendricks,* 247 id. 517; *Powers* v. *Heffernan,* 233 id. .597.) And it is not necessary that the easement claimed by the grantee be absolutely necessary to the use and enjoyment of the property; "it is sufficient if it is highly convenient and beneficial therefor." (*Newell* v. *Sass, supra;. Powers* v. *Heffernan, supra.*) Where an owner sells a portion of his land he is presumed to intend that the purchaser shall take it in its then condition. (14 Cyc. 1166.) This intention is to be sought, not in the undisclosed purpose of the vendor, but in what is manifest and implied from his acts. (*Liquid Carbolic Co.* v. *Wallace,* 219 Pa. 457; *Hopewell Mills* v. *Savings Bank,* 159 Mass. 519.) In *Feitler* v. *Dobbins, supra,* the rule is stated as follows: "The law applicable to the situation here is, that where the owner of entire premises arranges for ways, light, etc., for the benefit of the different parts or portions of the premises, and afterwards the premises are severed and the title vested in separate owners, each grant will carry with it, without being specifically mentioned, the rights and burdens and advantages imposed by the owner prior to such severance. The doctrine is founded upon the principle that the conveyance of a thing imports a grant of it as it actually exists at the time the conveyance is made, unless a contrary intention is manifested in the grant. This doctrine has often been applied by this court.—*Morrison* v. *King,* 62 Ill. 30; *Clarke* v. *Gaffeney,* 116 id. 362; *Newell* v. *Sass,* 142 id. 104; *Hankins* v. *Hendricks,* 247 id. 517." The following are a few of the cases which will illustrate how that doctrine has been applied by the courts in analogous cases:

In *Larson* v. *Petersen,* 53 N. J. Eq. 88, it was held that a water pipe leading from a driven well in a yard to a sink in the kitchen of a dwelling house, there ending in a pump by which water could be habitually drawn from the well to the kitchen for domestic purposes, would pass

by a conveyance of the dwelling house, alone, by the owner of both house and yard, although the well and water pipe were both hidden from view, and that the same result would follow a simultaneous conveyance of the house to one person and the yard and well to another, if the latter took with notice of the connection between the well and pump. In this connection see, also, 14 Cyc. 1183, where the rule is stated to be as follows: "If the owner of land devises a system of pipes or conduits through which water is conveyed from a spring on one portion of his premises to another portion for the benefit of the latter and then alienates the portion to which the water is thus conveyed, the right to receive water through such pipes or conduits over the land conveyed will pass to the grantee by general words."

In *Ingals* v. *Plamondon,* 75 Ill. 118, a furnace flue projected eight inches through a party wall. The owner of the two lots divided by the wall sold one of them and afterwards sold the other. A question arose between the first and the second grantees as to the right to maintain the flue. The flue was shown to be necessary to the maintenance of the furnace and its existence apparent to the second vendee when the premises were purchased, and the easement was upheld as appurtenant to the premises.

In *Powers* v. *Heffernan, supra,* it was held that where the owner of a building, upon erecting a new building on an adjoining lot, uses the stairway and hall of the old building for many years as the only means of access to the second floor of the new building, an easement attaches in favor of the new building upon a sale of the old building, although the only reservation in the deed is the right to one-half the party wall between the two buildings. This holding is based on the principle that where the owner of a building, while he was seized of the entire title, made certain arrangements with reference to access, heat, light and air which are highly beneficial and convenient to the

use and enjoyment of the property and enhance its value, sells a portion of the building he sells it in its then condition, and each portion of the severed premises is subject to the burdens or advantages thereby imposed or conferred upon the other by the owner.

In *Foote* v. *Yarlott, supra,* we held that where the owner of a flat-building executed two trust deeds for the north and south halves of the building, respectively, and afterward installed a heating plant so as to heat the whole building, the heating plant being located on the north half, an easement was created in favor of the south half in the beneficial use and enjoyment of that part of the heating plant located in the north half, which right could be asserted by anyone who might become the owner of the south half under the trust deed. It was there said: "After the trust deeds were executed, and before the extension of the time of payment, the owner of the property put in the steam heating plant, with its pipes and radiators, to heat the entire building. While it was designed for the benefit of every part of the building, that portion where the steam heat was generated was on the north half. If the plant had been in the building at the time of the making of the trust deeds an easement for the enjoyment of the heating plant by anyone who should become owner of the south twenty feet upon foreclosure would have passed although not expressly stated, on the principle that when a party grants a thing he grants everything pertaining to it necessary to its enjoyment. The owner could not create any charge or easement on the north half, after the execution of the trust deeds, to the detriment of the owner of that half, but the natural conclusion would be that the installing of the heating plant subject to the right of the owner of the south half to the beneficial use of the same plant constituted an addition to the security as to the north half, and so far as appears that is true. The owner installed the heating plant, which increased the value of both

parcels and which was necessary for the convenient and comfortable enjoyment of both, in such a way that the portion of the plant designed to generate the steam heat was on the north half, and the advantages and burdens of the arrangement attached to the property. Even more liberal principles ought to be applied in such a case than in case of the implied reservation sustained in *Powers* v. *Heffernan,* 233 Ill. 597. In our opinion the trust deed includes the easement of the beneficial use of that part of the heating plant located on the north twenty feet, and the owner of said north twenty feet must permit such beneficial use by anyone who may become the owner of the south twenty feet under the trust deed."

No distinction, in principle, exists or can be made in the application of the law of easements, between easement of heat, light and air or of ingress and egress, and the right to the use and enjoyment of the water rights and facilities shown in the case at bar. Nor can it well be said that an easement in the beneficial use and enjoyment of the heating plant in *Foote* v. *Yarlott, supra,* was more open, visible and continuous, and susceptible of being operated, used and enjoyed without the interference of man, than the water facilities, pump and engine are in the case at bar. The aid of man to put them in operation and keep them in repair is equally necessary and essential in both cases. The above cases so conclusively answer appellee's contentions upon this question as to render a further discussion of them at this time wholly unnecessary.

As to the rights conferred, if any, by the supposed contract between appellee and Tracy, appellee insists that it never became a binding contract for the reason that it was never fully executed by the parties, as it was never signed by Tracy, and there is no allegation in the bill that after it was signed by appellee it was delivered to and accepted by Tracy or acted upon by him as a binding contract. If it was never executed by the parties or acted upon by them

it would not constitute a binding contract and no rights were conferred by it. It appears that upon the same day the contract was signed by appellee he executed a warranty deed conveying all of the lands mentioned in the contract to said Tracy, and if it ever did become a binding contract it was fully executed on the same day it was made, in so far as the conveyance of the land therein described and agreed to be conveyed was concerned. Just what part this contract was intended to play, if any, in the transaction consummated that day is not made clear by anything contained in the record, and in view of appellee's insistence that it never became a binding contract and its incomplete and only partial execution, which tends very strongly to support his contention, we feel we ought not at this time to attempt to determine its effect upon the rights of the parties in the transaction had on that day. We are unable to perceive why the contract was drawn at all and signed by appellee unless there was a definite purpose on his part to place something in existence from which a prospective purchaser of the property might be led (or misled) into believing, without carefully investigating the legal force and effect of such writing, that the right to use the water went with the property mentioned in the contract. The contract does, however, at least show, wholly irrespective of the question as to whether or not it ever became a binding obligation, that appellee fully recognized the burden imposed by him upon his adjoining lands by reason of the water facilities he had installed for the purpose of supplying the property now owned by appellant with water for domestic and other uses, and would seem to have been intended to enable him to relieve his adjoining property of the burden of this easement just as soon as adequate water facilities should be afforded by the installation of water mains in Deerpath avenue by the public authorities. But however that may be, the only question before us for determination at this time is the sufficiency of the allegations of the bill

to entitle appellant to the relief prayed. As we are clearly of the opinion that the allegations of the bill are sufficient in this respect, the decree of the circuit court of Lake county must be reversed and the cause remanded.

For the reasons given, the decree will be reversed and the cause remanded to the circuit court of Lake county, with directions to overrule the demurrer, and for further proceedings in accordance with the views herein expressed.

*Reversed and remanded, with directions.*